IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PRICEPLAY.COM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 14-267-RGA |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| LINKEDIN CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| PRICEPLAY.COM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 14-386-RGA |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| GOOGLE INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| PRICEPLAY.COM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 14-512-RGA |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| FACEBOOK, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPENING BRIEF IN SUPPORT OF MOVING DEFENDANTS' MOTION TO
TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   NATURE AND STAGE OF THE PROCEEDINGS .........................................1

III.  SUMMARY OF ARGUMENT .............................................................................1

IV.   STATEMENT OF FACTS ....................................................................................3

    A.    Priceplay Has Little Connection to Delaware but
         Does Have Strong Connections to California....................................3

    B.    Moving Defendants' Documents and Witnesses Are
         Located in the Northern District of California. ..............................3

         1.    Google ..........................................................................4

         2.    LinkedIn........................................................................4

         3.    Facebook ......................................................................5

V.    ARGUMENT..........................................................................................................5

    A.    Applicable Legal Standards...............................................................5

    B.    Moving Defendants' Motion to Transfer Should Be
         Granted Because Both the Private and Public
         Factors Strongly Weigh in Favor of Transfer to the
         Northern District of California. ........................................................6

         1.    Priceplay Could Have Brought Its Lawsuit in the
            Northern District of California. ..................................6

         2.    The Private Interest Factors Strongly Favor Transfer
            to the Northern District of California. .......................7

            a.    Plaintiff's Choice of Forum Should Be Accorded
               Minimal Weight...................................................7

            b.    Moving Defendants' Preferred Forum Weighs in
               Favor of Transfer. ..............................................8

            c.    Transfer Is Favored Because Moving Defendants'
               Products Are Designed and Developed in the
               Northern District of California. .........................9

        d.     The Convenience of the Parties and Witnesses
                Favors Transfer.............................................................................10

        e.     The Location of Books and Records Favors
                Transfer.........................................................................................12

    3.    The Public Interest Factors Favor Transfer to the
        Northern District of California. ...................................................12

        a.     Practical Considerations that Could Make Trial
                Easy, Expeditious, or Inexpensive Weigh in Favor
                of Transfer. ...................................................................................12

        b.     The Relative Administrative Difficulty Due to
                Court Congestion Weighs in Favor of Transfer. ..........................13

        c.     The Remaining Public Interest Factors Are Neutral
                or Inapplicable. .............................................................................13

VI.    CONCLUSION .............................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Angiodynamics, Inc. v. Vascular Solutions, Inc.*,
  C.A. No. 09-554-JJF, 2010 WL 3037478 (D. Del. July 30, 2010) ............................................ 6

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ........................................................................... 8, 10, 12

*In re Link_A_Media Devices Corp.*,
  662 F.3d 1221 (Fed. Cir. 2011) ................................................................................... 2, 7

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995) ..................................................................................... 5, 6, 7

*Linex Techs., Inc. v. Hewlett-Packard Co.*,
  C.A. No. 11-400-GMS, 2013 WL 105323 (D. Del. Jan. 7, 2013) ..................................... 7, 8, 9

*Semcon Tech, LLC v. Intel Corp.*,
  C.A. No. 12-531-RGA, 2013 WL 126421 (D. Del. Jan. 8, 2013) ...................................... *passim*

*Signal Tech, LLC v. Analog Devices, Inc.*,
  C.A. No. 11-1073-RGA, 2012 WL 1134723 (D. Del. Apr. 3, 2012) ...................................... 8, 14

*Software Rights Archive, LLC v. Google, Inc.*,
  Case No. 2:07-cv-511-CE, 2010 WL 2950351 (E.D. Tex. July 22, 2010) ................................. 11

*Wacoh Co. v. Kionix Inc.*,
  845 F. Supp. 2d 597 (D. Del. 2012) ........................................................................... *passim*

**STATUTES**

28 U.S.C.
  § 1391(c)(2) ......................................................................................................... 7
  § 1404(a) ............................................................................................................. 1

**RULES**

Fed. R. Civ. P.
  Rule 45(c)(1)(B)(i) ................................................................................................ 10
  Rule 45(c)(1)(B)(ii) ............................................................................................... 12

# TABLE OF ABBREVIATIONS

| | |
|---|---|
| Plaintiff Priceplay.com, Inc. | Priceplay or Plaintiff |
| Defendant Google Inc. | Google |
| Defendant LinkedIn Corp. | LinkedIn |
| Defendant Facebook, Inc. | Facebook |
| Google Inc., LinkedIn Corp., and Facebook, Inc. collectively | Moving Defendants |
| Declaration of Ashvin Kannan in Support of Defendant LinkedIn Corp.'s Motion to Transfer Venue to the Northern District of California | Kannan Decl. |
| Declaration of Abeer Dubey in Support of Defendant Google Inc.'s Motion to Transfer Venue to the Northern District of California | Dubey Decl. |
| Declaration of Robin L. Brewer in Support of Moving Defendants' Motion to Transfer to the Northern District of California | Brewer Decl. |
| Declaration of Jeremy Jordan in Support of Moving Defendants' Motion to Transfer to the Northern District of California | Jordan Decl. |

## I.    INTRODUCTION

The facts of this case strongly favor transfer to the Northern District of California.  The only apparent connections between this case and the District of Delaware are (1) Priceplay's choice to bring suit here and (2) Moving Defendants' and Priceplay's incorporation in Delaware.  Both Priceplay's and Moving Defendants' connections to California are significantly stronger: All principal places of business are in California, the alleged claims arose in California, and the bulk of witnesses and evidence—including likely third-party witnesses and evidence—are in California.  This Court has transferred cases under similar circumstances and, in view of all the relevant factors, should do so here as well.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

Priceplay filed nearly identical Complaints against LinkedIn (C.A. No. 14-00276) on February 27, 2014, Google (C.A. No. 14-00386) on March 26, 2014, and Facebook (C.A. No. 14-00512) alleging that Moving Defendants infringe U.S. Patent Nos. 8,050,982 ("the '982 patent") and 8,494,917 ("the '917 patent") (collectively, "the asserted patents") "by operating an interactive e-commerce system or performing an interactive e-commerce process."  (D.I. 1 at 5, ¶¶ 20, 28.)  Pursuant to 28 U.S.C. § 1404(a), Moving Defendants request transfer of this action to the Northern District of California.  This is Moving Defendants' Opening Brief in support of that motion.

## III.    SUMMARY OF ARGUMENT

1.    Transfer in this case is proper, and both the private and public interest factors strongly weigh in favor of transfer from the District of Delaware to the Northern District of California.  As a threshold matter, Priceplay could have brought its lawsuit in the Northern District of California because Google's, LinkedIn's, and Facebook's principal places of business are in the Northern District of California.  Kannan Decl., ¶ 4; Dubey Decl., ¶ 4; Jordan Decl. ¶ 2.

2.     The private interest factors strongly favor transfer to the Northern District of California.  Plaintiff's choice of forum should be accorded minimal weight.  The only connections to the District of Delaware are:  (1) Plaintiff filed suit in Delaware and (2) Moving Defendants and Priceplay are incorporated in Delaware.  These facts are insufficient by themselves to keep this case in Delaware.  *See, e.g., In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011); *infra* Section V.B.2.a.  Moreover, the principal places of business, witnesses, books, records, and other evidence are all located in the Northern District of California.  Kannan Decl., ¶¶ 4, 7-8; Dubey Decl., ¶¶ 4-6, 9; Jordan Decl. ¶ 2-4.  In addition, Priceplay's principal place of business is also in California, and witnesses, books, records, and other evidence are likely in California.  (D.I. 1 at 1, ¶ 1.)  Further, many likely third-party witnesses who are named inventors of prior art references are in the Northern District of California and, thus, subject to that Court's trial subpoena power, but not that of the District of Delaware.  *See infra* Section V.B.2.d.  Finally, the alleged claim of infringement arose in the Northern District of California, because the design, development, and engineering of the underlying software that powers Google AdWords, LinkedIn Ads, and Facebook Ads occur in the Northern District of California—not in the District of Delaware.  *See infra* Section V.B.2.c.  Aside from incorporation and the current location of the suit, facts that should be accorded minimal weight, there are no ties to Delaware.

3.     The public interest factors also favor transfer to the Northern District of California.  Practical considerations that could make the trial easy, expeditious, or inexpensive strongly favor transfer in this case because key witnesses and documents are likely all located in the Northern District of California and are easier to access there than in Delaware.  Kannan Decl., ¶¶ 7-9; Dubey Decl., ¶¶ 6, 9; Jordan Decl. ¶ 3-4.  In contrast, no relevant witnesses or

evidence appear to be located in Delaware. *Id.*; (D.I. 1 at 1, ¶ 1). Additionally, the Northern District of California has a less congested docket than the District of Delaware, so the relative administrative difficulty resulting from court congestion weighs in favor of transfer. *See infra* Section V.B.3.b. The remaining public interest factors are neutral or inapplicable. Thus, Moving Defendants' motion to transfer should be granted because both the private and public factors strongly favor transfer to the Northern District of California.

## IV. STATEMENT OF FACTS

### A. Priceplay Has Little Connection to Delaware but Does Have Strong Connections to California.

Priceplay is a Delaware corporation with a principal place of business in Irvine, California. (*Id.* at 1, ¶ 1.) Priceplay has no other listed offices or locations, and all of its employees appear to reside in California. (*See id.*; *id.*, Ex. A (listing inventor Wayne Lin as being located in Irvine, California); *id.*, Ex. B (same).)

### B. Moving Defendants' Documents and Witnesses Are Located in the Northern District of California.

The headquarters for Moving Defendants are located in the Northern District of California and are their strategic centers of businesses. Kannan Decl., ¶ 4; Dubey Decl., ¶¶ 4-5; Jordan Decl. ¶ 2. In addition, Priceplay accuses Google AdWords, LinkedIn Ads, and Facebook Ads of infringing the asserted patents, for which relevant documents and evidence are located in the Northern District of California. (C.A. No. 14-00386, D.I. 1 at 4, ¶ 17); (C.A. No. 14-00276, D.I. 1 at 4, ¶ 17); (C.A. No. 14-00512, D.I. 1 at 4, ¶ 17); Kannan Decl., ¶¶ 6-8; Dubey Decl., ¶¶ 6, 9; Jordan Decl. ¶ 3-4. Moreover, Moving Defendants have no offices or other facilities in Delaware. Kannan Decl., ¶ 12; Dubey Decl., ¶ 8; Jordan Decl. ¶ 5.

### 1.     Google

Google has been headquartered in the Northern District of California since its founding in 1998, and in Mountain View, California, since 2003.  Dubey Decl., ¶ 4.  The majority of development for Google AdWords took place at Google's headquarters in Mountain View and ongoing development efforts and operations regarding Google AdWords are also predominantly based in Mountain View.  *Id.*, ¶ 6.  Further, Google engineers with relevant technical knowledge of AdWords, as well as Google employees familiar with relevant business and financial aspects of the product, are predominantly based in Mountain View.  *Id.*  All or nearly all of the documents relating to Google AdWords are also available in Mountain View, California, or electronically accessible from that location.  *Id.*, ¶ 9.  For example, any design and development documents regarding AdWords are maintained on secure servers, which are accessible and ultimately managed from Mountain View.  *Id.*  No development or product management personnel for AdWords, nor any associated technical or financial documentation, are located in the District of Delaware.  *Id.*, ¶¶ 7-8.

### 2.     LinkedIn

LinkedIn has been headquartered in the Northern District of California since its founding in 2003.  Kannan Decl., ¶ 4.  Its current headquarters are in Mountain View, California, which is located in Santa Clara County, California, and there are nearby offices in Sunnyvale, which is also in Santa Clara County, and in San Francisco, which is in the City and County of San Francisco.  *Id.*  Mountain View, Sunnyvale, and San Francisco are all in the Northern District of California.  *Id.*  LinkedIn's engineers who are most knowledgeable regarding advertising are located at LinkedIn's Mountain View, California office, as are the technical documentation relating to any advertising-related features and technologies.  *Id.*, ¶ 7.  LinkedIn's financial and marketing documentation for LinkedIn Ads is also physically present in Santa Clara County,

California, or electronically accessible from that location. *Id.*, ¶ 8. No development or product management personnel with unique knowledge relating to LinkedIn Ads, nor any associated technical or financial documentation, are located in the District of Delaware. *Id.*, ¶¶ 10-11.

### 3. Facebook

Facebook's headquarters are in Menlo Park, California. Jordan Decl. ¶ 2. Facebook was established in Palo Alto, California, in June 2004. *Id.* With the exception of the first few months of its existence, the vast majority of Facebook's existence and operations have occurred at its headquarters within the Northern District of California. *Id.*, ¶ 2-3. Consequently, the vast majority of Facebook's sources of proof and likely witnesses relevant to this action are, or are likely to be, located in the Northern District of California. *Id.*, ¶ 2-4. Facebook engineers responsible for the design, development, and operation of the www.facebook.com website, including Facebook Ads, are primarily located at Facebook's Menlo Park headquarters. *Id.*, ¶ 4. Conversely, none of Facebook's witnesses or evidence has ever been located in this District. Facebook maintains no offices in this District and knows of no employees who work in this district. *Id.*, ¶ 5. Facebook is also not aware of any relevant documents that are located in this District. *Id.*

## V. ARGUMENT

### A. Applicable Legal Standards

A case should be transferred to another district if it could have been brought in that district and the balance of convenience factors weigh in favor of transfer. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995). "[S]ection 1404(a) was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Id.*

The Third Circuit has articulated a non-exhaustive set of private and public factors to be weighed in considering transfer. The private interest factors are: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses to the extent the witnesses may be unavailable for trial in one of the fora; and (6) the location of books and records to the extent they may not be available in one of the fora. *Jumara*, 55 F.3d at 879. The public interest factors are: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; and (5) the familiarity of the trial judge with the applicable state law in diversity cases. *Jumara*, 55 F.3d at 879-80.

Transfer is particularly appropriate where, as here, there are no potential witnesses and no relevant evidence in the district deciding the transfer motion and the most relevant evidence is concentrated in and around the transferee district. *Angiodynamics, Inc. v. Vascular Solutions, Inc.*, C.A. No. 09-554-JJF, 2010 WL 3037478, at *4 (D. Del. July 30, 2010) (transferring case because "Delaware has a limited connection to this litigation" and "most of the potential and identified witnesses, and relevant records and evidence are located in [proposed transferee district]").

**B.**  **Moving Defendants' Motion to Transfer Should Be Granted Because Both the Private and Public Factors Strongly Weigh in Favor of Transfer to the Northern District of California.**

**1.**  **Priceplay Could Have Brought Its Lawsuit in the Northern District of California.**

As a threshold matter, "[t]he first question is, could the case have been brought in the Court to which transfer is sought?" *Wacoh Co. v. Kionix Inc.*, 845 F. Supp. 2d 597, 601 (D. Del.

2012). The relevant inquiry for corporate defendants is whether the defendant is subject to personal jurisdiction in the transferee district. *See* 28 U.S.C. § 1391(c)(2). Moving Defendants' principal places of business are in the Northern District of California. Kannan Decl., ¶ 4; Dubey Decl., ¶ 4; Jordan Decl., ¶ 2. It does not appear this is in dispute. (*See* D.I. 1 at 1, ¶ 2.) Thus, Moving Defendants are subject to personal jurisdiction in the Northern District of California, and this case could have been brought there as required by Section 1404(a).

> **2.     The Private Interest Factors Strongly Favor Transfer to the Northern District of California.**

>> **a.     Plaintiff's Choice of Forum Should Be Accorded Minimal Weight.**

Although the *Jumara* factors place weight on a plaintiff's choice of a forum, "[w]hen a plaintiff brings its charges in a venue that is not its home forum, . . . that choice of forum is entitled to less deference." *Link_A_Media*, 662 F.3d at 1223; *Semcon Tech, LLC v. Intel Corp.*, C.A. No. 12-531-RGA, 2013 WL 126421, at *2 (D. Del. Jan. 8, 2013) ("[P]laintiff's choice of forum [is] not as compelling if it is not plaintiff's 'home turf.'") (citation and internal quotation marks omitted). "[T]he term 'home forum' [means] the jurisdiction in which a party *physically* resides . . . ." *Linex Techs., Inc. v. Hewlett-Packard Co.*, C.A. No. 11-400-GMS, 2013 WL 105323, at *3 (D. Del. Jan. 7, 2013) (emphasis added). Defendant's state of incorporation is irrelevant to this analysis. *See Link_A_Media*, 662 F.3d at 1224 ("Neither § 1404 nor *Jumara* list a party's state of incorporation as a factor for a venue inquiry.").

Here, although Priceplay is incorporated in Delaware, its "home turf" is in California where its principal place of business is located. Similarly, although Moving Defendants are incorporated in Delaware, their principal places of business are also located in California. Because Priceplay's only other connection to this district is that it chose Delaware as its forum, Priceplay's forum choice is entitled to less deference. *See id.* at 1223.

This Court has granted motions to transfer in similar situations where neither plaintiff nor defendant's home turf was in Delaware. *See, e.g., Signal Tech, LLC v. Analog Devices, Inc.*, C.A. No. 11-1073-RGA, 2012 WL 1134723, at *5 (D. Del. Apr. 3, 2012) (granting motion to transfer where plaintiff was incorporated in Delaware); *Semcon Tech*, 2013 WL 126421, at *2, 5, 8 (granting motions to transfer where defendants were Delaware corporations with principal places of business in Texas and the Northern District of California); *Wacoh*, 845 F. Supp. 2d at 602, 605 (granting motions to transfer where defendants were Delaware corporations with principal places of business in New York and the Northern District of California); *Linex Techs.*, 2013 WL 105323, at *1 (granting motion to transfer where plaintiff and defendants were both incorporated in Delaware and where defendants had their principal places of business in the Northern District of California). Thus, plaintiff's choice of forum should be accorded minimal weight.

### b. Moving Defendants' Preferred Forum Weighs in Favor of Transfer.

As is apparent from this motion, Moving Defendants' preference is the Northern District of California. This is a rational and legitimate choice informed by the fact that Moving Defendants' headquarters and principal places of business are in the Northern District of California. Kannan Decl., ¶ 4; Dubey Decl., ¶ 4; Jordan Decl. ¶ 2. Moving Defendants' witnesses and evidence are at its principal place of business in the Northern District of California. Kannan Decl., ¶¶ 7-8; Dubey Decl., ¶¶ 6, 9; Jordan Decl. ¶ 3-4. Indeed, the bulk of the relevant evidence for this case is in the Northern District of California. *See Wacoh*, 845 F. Supp. 2d at 602-03 ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.") (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)).

Furthermore, likely third-party witnesses, such as prior art witnesses, reside within the trial subpoena power of the Northern District of California. *See infra* Section V.B.2.d. Given the Northern District of California's close connections to this case, Moving Defendants' "decision to seek to litigate in that District is rational and legitimate." *See Semcon Tech*, 2013 WL 126421, at *2. Thus, Moving Defendants' forum preference weighs in favor of transfer.

### c. Transfer Is Favored Because Moving Defendants' Products Are Designed and Developed in the Northern District of California.

Patent cases arise wherever someone has committed acts of infringement. *Linex Techs.*, 2013 WL 105323, at *4. Nonetheless, "[t]he court . . . has recognized that infringement claims have even deeper roots in the forum where the accused products were developed. Therefore, the 'design, development, and marketing' of the defendants' products in the Northern District of California leads this factor to weigh slightly in favor of transfer." *Linex Techs.*, 2013 WL 105323, at *4 (citations omitted) (citing in part *Wacoh*, 845 F. Supp. 2d at 602 ("To some extent, the claims arose where the allegedly infringing products were designed and manufactured.")).

Moving Defendants also have no offices or other facilities in Delaware. Kannan Decl., ¶ 12; Dubey Decl., ¶ 8; Jordan Decl. ¶ 5. *See Semcon Tech*, 2013 WL 126421, at *2 ("[W]hile it may be true that the products made by the infringing methods are sold everywhere, the actual infringing activities are taking place in Texas. I do not think this is the usual patent case where it is fair to say that the claims arise wherever the defendant's products are sold."). As a result, none of the alleged infringing activity occurs within this District. Thus, because the alleged claim arose in the Northern District of California, by virtue of the location of Moving Defendants' design, development, and engineering of the accused feature, this factor weighs in favor of transfer.

### d. The Convenience of the Parties and Witnesses Favors Transfer.

"The convenience of the witnesses is probably the single most important factor in transfer analysis." *In re Genentech*, 566 F.3d at 1343. Here, the vast majority of Moving Defendants' employees with knowledge of the design, development, and implementation of the accused products are located in the Northern District of California. Kannan Decl., ¶ 7; Dubey Decl., ¶ 6; Jordan Decl. ¶ 4. Litigating this matter in the Northern District of California would cause less disruption to Moving Defendants and their witnesses than litigating this matter in the District of Delaware. *See Wacoh*, 845 F. Supp. 2d at 603 ("It would . . . interfere less with the defendants' business operations if there were no travel to Delaware involved.").

In fact, litigating this matter in the Northern District of California would be more convenient for Plaintiff, too. Although Priceplay is located in Irvine, which is in the Central District of California, travel from Irvine to the Northern District of California would be far more convenient than travel to Delaware. (*See* D.I. 1 at 1, ¶ 1.) Moreover, Wayne Lin, named inventor of the asserted patents (D.I. 1 at 3, ¶ 11), is also the CEO of Priceplay. Because Priceplay and Mr. Lin are both located in California they are not subject to this Court's trial subpoena power, but are subject to the trial subpoena power of the Northern District of California. Fed. R. Civ. P. 45(c)(1)(B)(i). As in other cases where this Court has granted such motions to transfer, "[n]o witnesses from Delaware have been identified, and it is unlikely that any such witnesses exist." *Wacoh*, 845 F. Supp. 2d at 602.

Furthermore, the convenience of third-party witnesses also weighs in favor of transferring to the Northern District of California. Numerous potential third-party prior art witnesses appear to be located in California. For example, U.S. Patent Nos. 5,710,887; 5,835,896; and 5,855,008 are three prior art references submitted in an *ex parte* reexamination of the parent patent of the

asserted patents that may also be used to invalidate the asserted patents. *See* Request for *Ex Parte* Reexamination, Control No. 90/009,444, filed Apr. 1, 2009, at 3-4 (Brewer Decl., Ex. A); U.S. Patent No. 5,710,887 (Brewer Decl., Ex. B); U.S. Patent No. 5,835,896 (Brewer Decl., Ex. C); U.S. Patent No. 5,855,008 (Brewer Decl., Ex. D). The reexamination of the parent patent resulted in the cancellation of all challenged claims. *See* U.S. Patent No. 6,978,253, *Ex Parte* Reexamination Certificate, at 1:12 (Brewer Decl., Ex. E). Collectively, these three references alone name fourteen inventors who are all in the Northern District of California. *See* Brewer Decl., Ex. B at 1; Brewer Decl., Ex. C at 1; Brewer Decl., Ex. D at 1.

Companies that hosted internet advertising platforms before the priority dates of the asserted patents are also likely to have relevant prior art in their possession, and many are also located in the Northern District of California. For example, Overture Services, Inc. ("Overture"), formerly known as GoTo.com, launched prior to June 1999. Brewer Decl., ¶ 7, Ex. F. Overture later merged with Yahoo! Inc. ("Yahoo!"), owner of Yahoo! Search Marketing, which is headquartered in Sunnyvale, California. Brewer Decl. ¶ 8, Ex. G; *see also Software Rights Archive, LLC v. Google, Inc.,* Case No. 2:07-cv-511-CE, 2010 WL 2950351, at *1 (E.D. Tex. July 22, 2010) (noting that Yahoo! has a principal place of business in Sunnyvale, California). Thus, it is likely that further prior art searching will turn up even more third-party witnesses who are in California subject to the trial subpoena power of the Northern District of California.

Similarly, ex-employees of Moving Defendants and Plaintiff who might be needed for this action "would likely not move out-of-state and therefore would continue to be subject to the subpoena power in the Northern District of California." *Wacoh*, 845 F. Supp. 2d at 602-03. Moreover, Rule 45(c)(1)(B)(ii) empowers trial courts to compel attendance at trial of non-parties located more than 100 miles from the court only when they would not "incur substantial

expense." Fed. R. Civ. P. 45(c)(1)(B)(ii). As noted, *supra*, important third-party witnesses are likely located in or nearer to California, thus they would be less likely to "incur substantial expense" to appear at trial in the Northern District of California than this District. For these third-party witnesses, the Northern District of California is a far more convenient venue than the District of Delaware.

Thus, the convenience of all parties and potential witnesses favors transfer.

### e. The Location of Books and Records Favors Transfer.

Similarly, the bulk of books and records is also in the Northern District of California. Kannan Decl., ¶¶ 7-8; Dubey Decl., ¶ 9. It is well accepted that the bulk of the relevant evidence usually comes from the accused infringer in patent infringement cases. *In re Genentech*, 566 F.3d at 1345. Further, even Plaintiff's books and records are likely located in California as well, at Priceplay's principal place of business. (*See* D.I. 1 at 1, ¶ 1.) In contrast, none of the relevant books and records appears to be in the District of Delaware. *See id.* Thus, the location of books and records favors transfer.

### 3. The Public Interest Factors Favor Transfer to the Northern District of California.

### a. Practical Considerations that Could Make Trial Easy, Expeditious, or Inexpensive Weigh in Favor of Transfer.

"A trial in Delaware is very likely to be less easy and more expensive" for both Priceplay and Moving Defendants than a trial in the Northern District of California "because of travel considerations and expenses for witnesses." *Semcon Tech.*, 2013 WL 126421, at *6 (granting motion to transfer where travel considerations and expenses would benefit defendant only). As mentioned above, both Plaintiff's and Moving Defendants' witnesses and third-party witnesses are located in California, so a transfer would benefit both Plaintiff and Moving Defendants and would obviate the need for a significant amount of travel for both party and non-party witnesses.

*See supra* Section V.B.2.d. Other logistics would be simplified as well and made less expensive. For example, confidential exhibits and source code would not need to be shipped from California to Delaware. *See supra* Section V.B.2.e. Thus, practical considerations weigh in favor of transfer.

### b. The Relative Administrative Difficulty Due to Court Congestion Weighs in Favor of Transfer.

The most recent federal court management statistics indicate that the Northern District of California's docket is less congested than the District of Delaware's docket. For example, as of December 31, 2013, the Northern District of California has 482 pending cases per judge, whereas the District of Delaware has 706 pending cases per judge. Brewer Decl., Ex. H, at 14, 66. The difference becomes starker when taking into account weighted filings. In the Northern District of California, each judge has 616 weighted filings, whereas the District of Delaware has 1,805 weighted filings per judge. *Id.* Also, the median time to trial in the Northern District of California is about three and a half months shorter than in the District of Delaware. *Id.* Moreover, congestion appears to be increasing in the District of Delaware, whereas congestion appears to be decreasing in the Northern District of California. *See id.* (showing an annual *increase* in the number of filings in the District of Delaware for the last six years, but showing an annual *decrease* in the number of filings for the last three years in the Northern District of California). Thus, the relative administrative difficulty due to court congestion weighs in favor of transfer to the Northern District of California.

### c. The Remaining Public Interest Factors Are Neutral or Inapplicable.

This is not a diversity case so knowledge of state law is irrelevant, and enforceability of the judgment is not an issue here. *Wacoh*, 845 F. Supp. 2d at 603-04. The local controversy consideration is also inapplicable, or neutral at best. *Semcon Tech.*, 2013 WL 126421, at *4

("The 'local controversy' consideration is usually inapplicable in a patent case."). While the parties are all incorporated in Delaware, none of the corporations' principal places of business are in Delaware. (D.I. 1 at 1, ¶¶ 1-2.); *see Signal Tech*, 2012 WL 1134723, at *4 ("[F]or purposes of analysis, the plaintiff is the equivalent of not being a Delaware corporation."). Because the remaining public interest factors are neutral or inapplicable, the total weight of the public interest factors favors transfer to the Northern District of California.

Thus, because both the private and public interest factors strongly weigh in favor of transfer, this case should be transferred to the Northern District of California.

## VI.    CONCLUSION

For the foregoing reasons, Moving Defendants' motion to transfer the action to the Northern District of California should be granted.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

James C. Yoon
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA  94304
Tel:  (650) 493-9300

Stefani E. Shanberg
Jennifer J. Schmidt
Robin L. Brewer
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA  94105
Tel:  (415) 947-2000

By:    */s/ Richard L. Horwitz*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Erich W. Struble (#5349)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com
    estruble@potteranderson.com

*Attorneys for Defendant LinkedIn Corporation and Google Inc.*

BLANK ROME LLP

By: */s/ Steven L. Caponi*  
     Steven L. Caponi, Esquire (# 3484)  
     1201 North Market Street, Suite 800  
     Wilmington, DE  10901  
     (302) 425-6408  
     caponi@blankrome.com

Dated:  July 8, 2014      *Attorneys for Defendant, Facebook, Inc.*

1158445 / 41433/ 41569

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I, Richard L. Horwitz, hereby certify that on July 8, 2014, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I hereby certify that on July 8, 2014, the attached document was electronically mailed to

the following person(s)

Richard D. Kirk
Stephen B. Brauerman
Vanessa R. Tiradentes
Sara E. Bussiere
Bayard, P.A.
222 Delaware Ave., Suite 900
P. O. Box 25130
Wilmington, DE 19899
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com
sbussiere@bayardlaw.com

Scott M. Daniels
Darrin A. Auito
Westerman Hattori Daniels & Adrian
1250 Connecticut Avenue, NW
Suite 700
Washington, D.C. 20036
sdaniels@whda.com
dauito@whda.com

By: /s/ Richard L. Horwitz
Richard L. Horwitz
David E. Moore
Erich W. Struble
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
estruble@potteranderson.com

1152638 / 41433/ 41569